UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PAVEL ANDREENKO,

               Petitioner,             **No. 6:11-CV-6610(MAT)**
     -vs-                          **DECISION AND ORDER**

ERIC H. HOLDER, Attorney General
of the United States; JANET
NAPOLITANO, Secretary of the
Department of Homeland Security;
JOHN T. MORTON, Secretary of
Immigration and Customs Enforcement,

               Respondents.
_____

## I.   Introduction

In this pro se petition filed pursuant to 28 U.S.C. § 2241, Pavel Andreenko ("Andreenko" or "Petitioner") argues, inter alia, that his continued detention in Respondents' custody is unlawful, based on the Supreme Court's decision in Zadvydas v. I.N.S., 533 U.S. 678 (2001).

## II.  Factual Background and Procedural History

Andreenko is a native of the Union of Soviet Socialist Republics and a citizen of Russia, who was admitted to the United States at New York, New York, on or about September 20, 1991, as a B-2 temporary visitor for pleasure with authorization to remain in the United States for a temporary period not to exceed March 19, 1992. Andreenko remained in the United States beyond March 19, 1992, without authorization from the former Immigration and Naturalization Service ("INS").

Andreenko was placed in immigration removal proceedings by a Notice to Appear dated March 11, 1998, which charged him pursuant to Immigration and Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), with being subject to removal from the United States as a non-immigrant who has remained in the United States for a time longer than permitted.

On February 19, 2002, an immigration judge ("IJ") granted Andreenko a Suspension of Deportation pursuant to Section 203 of the Nicaraguan Adjustment and Central American Relief Act. On May 2, 2002, Andreenko's status was adjusted to that of lawful permanent resident. Andreenko has been convicted of several criminal offenses in the United States including criminal possession of a controlled substance in the seventh degree on June 29, 2005, in Kings County, New York Criminal Court; disorderly conduct on January 4, 2007; criminal possession of marijuana and intentional damage to a monument on May 8, 2007, in the General District Court of Criminal, County of Fredericksburg, Virginia; promoting prison contraband in the first degree (a razor blade) on May 12, 2008, in Bronx County Supreme Court, New York; and criminal mischief in the fourth degree, on July 25, 2008.

On January 30, 2008, Andreenko was encountered by officers of the DHS New York City Criminal Alien Program at the Riker's Island Correctional Facility in New York City. After Andreenko's

immigration status was confirmed, DHS lodged a detainer against Andreeko at the correctional facility.

Andreenko was placed in immigration removal proceedings by a Notice to Appear dated May 31, 2008, which charged him pursuant to INA § 237(a)(2)(B)(I), 8 U.S.C. § 1227(a)(2)(B)(I), with being subject to removal from the United States as a non-immigrant who has been convicted of a controlled substance offense, and pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), as a non-immigrant who has been convicted of an aggravated felony, as defined in INA § 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B), i.e., an offense relating to the illicit trafficking in a controlled substance.

Upon his release from the custody of the New York State Department of Correctional Services and Community Supervision, Andreenko was received into DHS custody on October 22, 2008. His initial detention in DHS custody was pursuant to INA § 236, 8 U.S.C. § 1226 (pre-final detention).

On November 3, 2008, Andreenko, through counsel, admitted the factual allegations in the Notice to Appear and conceded removability as charged under INA § 237(a)(2)(B)(I), 8 U.S.C. § 1227(a)(2)(B)(I), but he contested removability under INA § 237(a)(2)(B)(I), 8 U.S.C. § 1227(a)(2)(B)(I). Subsequently, DHS withdrew the aggravated felony charge filed against Andreenko pursuant to INA § 237(a)(2)(B)(I), 8 U.S.C. § 1227(a)(2)(B)(I).

On February 16, 2010, an IJ found Andreenko subject to mandatory detention under INA § 236(c), 8 U.S.C. § 1226(c), for the duration of his immigration removal proceedings. Andreenko appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). On April 19, 2010, the BIA dismissed Andreenko's appeal of the mandatory detention order.

On November 8, 2010, an IJ denied Andreenko's applications for cancellation of removal and denial of relief under the 12 Convention Against Torture ("CAT"), and ordered him removed from the United States. See In re Pavel Andreenko, No. A070 529 130 (B.I.A. Mar. 4, 2011), aff'g No. A070 529 130 (Immig. Ct. N.Y. City Nov. 8, 2010). Andreenko appealed the IJ's decision to the BIA. On March 4, 2011, the BIA dismissed Andreenko's appeal of the removal order.

On March 10, 2011, DHS served Andreenko with a formal Warning for Failure to Depart (Form I-229(a)), along with an instruction sheet listing actions that Andreenko was required to complete within 30 days to assist in obtaining a travel document for his removal from the United States. The warning form advised Andreenko, among other things, of penalties under INA § 243, 8 U.S.C. § 1253, for conniving or conspiring to prevent or hamper his departure from the United States, and also advised him that pursuant to INA § 241(a)(1)(C), 8 U.S.C. § 1231 a)(1)(C), a failure to comply or provide sufficient evidence of his inability to comply, could

result in the extension of the removal period and subject him to further detention.

Upon Andreenko's order of removal becoming final, DHS commenced efforts on March 11, 2011, to secure a travel document for his removal to Russia by sending a presentation packet to the Consulate General of Russia ("the Russian Consulate") in New York City, requesting that a travel document be issued for Andreenko's removal.

On March 28, 2011, Andreenko filed a petition for review of the BIA's order of March 4, 2011, accompanied by a request for stay of removal, in the United States Court of Appeals for the Second Circuit. See Andreenko v. Holder, 2d Cir. Docket No. 11-1190-ag. Because Andreenko filed a motion for stay of removal, DHS was prevented from executing the immigration order of removal against Andreenko due to the forbearance agreement between DHS and the Second Circuit.[1]

On May 8, 2012, the Second Circuit denied in part and dismissed in part Andreenko's petition for review. Andreenko v. Holder, No. 11-1190-ag, 2012 WL 1592957, at *1 (2d Cir. May 8, 2012) (summary order). Because Andreenko is removable by reason of

---

[1]

The forbearance policy represents an informal agreement between DHS and the Second Circuit pursuant to which DHS will refrain from executing a removal order until after the alien's motion for stay is dismissed or otherwise determined by the Second Circuit. Thus, in this case, DHS has had less than one month to accomplish Andreenko's removal from the United States before the forbearance policy took effect.

having committed a criminal offense covered by 8 U.S.C.
§ 1227(a)(2)(B) (relating to convictions for controlled substances
offenses), the Second Circuit lacked jurisdiction to review the
BIA's factual findings and discretionary determinations. However,
the Second Circuit retained jurisdiction to review, de novo,
questions of law. Andreenko, 2012 WL 1592957, at *1 (citations
omitted). The Second Circuit determined that the BIA did not err in
finding that Andreenko failed to satisfy his burden of proof for
CAT relief, "as the country conditions evidence he submitted, while
indicating that the Russian health care system is rife with
corruption and that many health care facilities do not provide
competent and adequate care, did not establish that any substandard
treatment he might receive at a mental health facility would be
inflicted by or with the acquiescence of Russian officials with the
specific intent to cause him severe physical or mental pain or
suffering, or that he will more likely than not be individually and
intentionally singled out for torture by hospital officials because
of his mental health afflictions." Andreenko, 2012 WL 1592957, at
*1 (citations omitted). With regard to Andreenko's application for
cancellation of removal, the Second Circuit determined that it
lacked jurisdiction to consider the reasonableness of the BIA's
discretionary determination that the factors favorable to a grant
of cancellation of removal were outweighed by adverse factors, and
it rejected Andreenko's due process argument as essentially a

factual dispute cloaked in constitutional rhetoric. Id. (citation omitted). Finally, the Second Circuit noted that as it had completed its review, any stay of removal previously granted was vacated, and any pending motion for a stay of removal was dismissed. Id.

### III. Discussion

#### A.  Zadvydas Claim

Pursuant to 8 U.S.C. § 1231, "the Attorney General shall remove the alien from the United States within a period of 90 days" of the final removal order. The statute provides that certain aliens, including inadmissible and criminal aliens, shall continue to be subject to "supervision," which has been interpreted to include detention, even after the ninety-day period. 8 U.S.C. § 1231(a)(6); see also Zadvydas, 533 U.S. at 688-99. In Zadvydas, the Supreme Court addressed the question of whether the indefinite detention of two lawful permanent resident aliens, who had been ordered removed because of their criminal convictions, violated due process and constituted an impermissible application of the Attorney General's statutory authority. 533 U.S. at 688-99. The Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. Zadvydas thus established that detention is presumptively reasonable for six months after a removal order. It can become unreasonable after six months if the alien demonstrates that there

is no significant likelihood of removal in the reasonably foreseeable future and the Government cannot rebut that showing. In such cases, continued detention is improper. Id. at 701.

The Second Circuit has explained that the Zadvydas "reasonable foreseeability" test "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights." Wang v. Ashcroft, 320 F.3d 130, 146 (2d Cir. 2003). Pursuant to the Zadvydas decision and the regulations enacted in the wake of Zadvydas, it remains Andreenko's burden to demonstrate that there is no significant likelihood of removal in the reasonably foreseeable future. See 533 U.S. at 701 (an alien has the burden of demonstrating "good reason to believe there is no reasonable likelihood of removal in the reasonably foreseeable future").

Here, assuming that the removal period has commenced, and the presumptively reasonable six-month period has elapsed, the Court nevertheless concludes that Andreenko is not entitled to relief under Zadvydas because he has not shown that the INS will be unable to remove him within a reasonable time after the resolution of his petition for review.

Detention during an appellate stay of removal, whether formal or in accordance with the Second Circuit's informal forbearance policy, generally is not indefinite because the litigation itself has a definite endpoint. See generally, Prieto-Romero v. Clark, 534

F.3d 1053, 1065 (9th Cir. 2008)(alien's th lengthy detention not indefinite under INA § 236 where endpoint foreseeable with end of litigation); Soberanes v. Comfort, 388 F.3d 1305, 1311 (10th Cir. 2004) (holding alien's detention during judicial review not indefinite because it has a "definite and evidently impending termination point" ); Obikanye v. INS, No. 03-2147, 78 Fed. Appx. 769, **772, 2003 WL 22429036, at **3 (2d Cir. Oct. 24, 2003) ("Because Obikanye's removal is reasonably foreseeable, his detention does not implicate Zadvydas; he will be subject to removal if this Court denies his pending petition for review, and, if he prevails on the petition for review and is granted asylum, he will be released. Accordingly, the district court properly denied his § 2241 petition."); cf. Ly v. Hansen, 351 F.3d 263, 265 n. 1 & 271 (6th Cir. 2003) (holding alien's detention unreasonable where there was "no chance of actual, final removal" because his home country, Vietnam, "has not and does not accept deportees because there is no repatriation agreement"). Here, the endpoint in Andreenko's litigation challenging the underlying removal order has been reached, as the Second Circuit recently dismissed in part and vacated in part his petition for review, and vacated any stay of removal that previously had been granted. Andreenko v. Holder, 2012 WL 1592957, at *2. DHS now can recommence efforts to secure a new travel document for Andreenko from the Russian Consulate. In May 2011, Russia, Andreenko's native country, issued a travel document

for his removal to Russia. However, DHS was not able to finalize travel arrangements for Andreeko's removal before the informal stay of removal went into effect upon Andreenko's filing of a petition for review in the Second Circuit. DHS thus expects, based upon past experience, that another such document will be issued by the Russian Consulate upon a renewed request.

Andreenko's habeas petition sets forth no basis upon which this Court could infer that there is no significant likelihood of his repatriation to Russia. Failure to provide evidence of barriers to removal has been held to be fatal to aliens' claims under Zadvydas. See, e.g., Kassama v. Dep't of Homeland Sec., 553 F. Supp.2d 301, 306-07 (W.D.N.Y. 2008) (Siragusa, D.J.) (finding that alien failed to meet initial burden where there was "no evidentiary proof in admissible form to suggest" that foreign country will not issue his travel documents); Haidara v. Mule, No. 07-CV-616, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (Arcara, D.J.) (finding that alien did not meet where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future"); Singh v. Holmes, No. 02-CV-529, 2004 WL 2280366, at *5 (W.D.N.Y. Oct. 8, 2004) (Foschio, M.J.) (holding that alien who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet burden of proof).

**B.    Requests for Cancellation of Removal and for Stay of Removal.**

Section 106 of the REAL ID Act amended INA § 242, 8 U.S.C. § 1252, by changing the procedures for judicial review of administrative final orders of removal. See Pub. L. No. 109-13, 12 119 Stat. 231 (2005). Section 106(a)(1) reads in relevant part as follows: "[A] petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal." REAL ID Act, Pub. L. No. 109-13, § 106(a)(1), 119 Stat. 231 (2005); codified at 8 U.S.C. § 1252(a)(5).  Thus, the REAL ID Act "specifically stripped the district courts of their habeas corpus jurisdiction over orders of removal. Section 106(a)(1) of the Act mandates that the courts of appeals shall be the sole and exclusive means for judicial review of an order of removal." Saavedra De Barreto v. I.N.S., 427 F. Supp.2d 51, 54 (D. Conn. 2006); see also Moreno Bravo v. Gonzales, 463 F.3d 253, 261 (2d Cir. 2006) (Section 1252 mandates "that 'a petition for review filed with the appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of the [Immigration and Nationality Act]. This is unquestionably a jurisdiction-stripping provision, particularly as it relates to habeas jurisdiction.") (quoting 8 U.S.C. § 1252(a)(5)) (citation omitted); Marquez Almanzar v. I.N.S., 418 F.3d 210, 215 (2d Cir. 2005) (finding that 8 U.S.C. § 1252(a)(5)

"unequivocally eliminates" habeas corpus review of removal orders from district court).

Even where a removal order is being challenged indirectly, the provisions of the REAL ID Act still apply to bar a claim for cancellation of removal. See Delgado v. Quarantillo, 643 F.3d 52, 55 (2d Cir. 2011)(finding that a mandamus action to compel United States Citizenship & Immigration Services ("U.S.C.I.S") to consider an application for permission to re-apply for admission after deportation amounted to an "indirect challenge" to reinstated order of removal, and thus REAL ID Act applied to bar action). In addition,"[t]he jurisdictional limits set forth in INA § 1252(a)(5) also prohibit district courts from considering motions to stay removal proceedings." Lakhani v. U.S.C.I.S., Case No. 2:11-cv-58, 817 F. Supp.2d 390, 392, 2011 WL 4715171, at *2 (D. Vt. Sept. 30, 2011) (collecting cases). Accordingly, Andreenko's requests for cancellation of removal and for stay of removal must be dismissed for lack of jurisdiction. Accord, e.g., Lakhani, 817 F. Supp.2d at 392; see also Royale v. I.N.S., No. 10-CV-2105 (KAM), 2010 WL 2348651, at *1 (E.D.N.Y. June 9, 2010).

## IV. Conclusion

For the foregoing reasons, Pavel Andreenko's § 2241 petition is denied without prejudice, with leave to re-file, should it subsequently appear that his removal is no longer reasonably foreseeable. Because Petitioner has not made a "substantial showing

of the denial of a constitutional right" pursuant to 28 U.S.C.

§ 2253(c)(2), no certificate of appealability shall issue.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     September 18, 2012
           Rochester, New York